Cheryll DYER, et. al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 3:99–CV–95.

United States District Court, E.D. Tennessee.

May 19, 2000.

David C. Lee, J.D. Lee, Lee, Lee and Lee, Knoxville, TN, for plaintiffs.

Joann J. Bordeaux, J. Patrick Glynn, Christina M. Humway, Henry T. Miller, David W. Ogden, Donald M. Remy, Steven M. Talson, U.S. Dept. of Justice, Torts Branch, Civ. Division, Washington, DC, for defendant.

## MEMORANDUM

COLLIER, District Judge.

This matter is before the Court on the Motion to Dismiss Plaintiffs' Second Amended Complaint for Lack of Subject Matter Jurisdiction (Court File No. 24) filed by Defendant United States of America (the "Government"). In addressing this motion, the Court necessarily addresses the Government's Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction (Court File No. 4) and Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Subject Matter Jurisdiction (Court File No. 13). Plaintiffs Cheryl and Rick Dyer filed a response (Court File No. 7) and an Amended Complaint (Court File No. 12) after the first motion to dismiss was filed. Plaintiffs filed a response (Court File No. 15) and a Second Amended Complaint (Court File No. 23) after the motion to dismiss the Amended Complaint was filed. They have not responded to the final motion to dismiss the Second Amended Complaint.

The Dyers claim the Government is liable under the Federal Tort Claims Act, 28 U.S.C. section 1346(b) ("FTCA"),[1] for damages resulting from the injuries Mrs. Dyer incurred while she was employed by Lockheed Martin Energy Systems, Inc. ("Lockheed") during the dismantling of a government nuclear facility at Oak Ridge, Tennessee, the K-25 nuclear facility. In its various motions to dismiss, the Government contests the subject matter jurisdiction of this Court by arguing the Dyers' claims fall within the discretionary function, misrepresentation, or government contractor exceptions to the FTCA's waiver of sovereign immunity. For the following reasons, the Court will **GRANT** Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint for Lack of Subject Matter Jurisdiction (Court File No. 24) and will **DISMISS** the other two motions (Court File Nos. 4 & 13) as **MOOT**.

## I. STANDARD OF REVIEW

Rule 12(b)(1) motions generally come in two varieties. First, a defendant may make a facial attack that merely questions the legal sufficiency of the pleadings. In reviewing such facial attacks, a trial court takes the plaintiff's allegations in the complaint as true, similar to a Rule 12(b)(6) motion to dismiss. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.), *cert. denied*, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994); *Ohio National Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). In the second instance, a trial court is asked to consider a factual attack on the allegations giving rise to subject matter jurisdiction. In this situation, no presumption of truthfulness at-

---

**1.** This statute allows personal injury suits against the government in certain limited circumstances:

(b)(1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1,

1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

taches to the plaintiff's factual allegations. *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir.1996); *Ritchie,* 15 F.3d at 598; *Ohio National,* 922 F.2d at 325; *Cooley v. United States,* 791 F.Supp. 1294, 1298 (E.D.Tenn.1992), *aff'd sub nom. Myers v. United States,* 17 F.3d 890 (6th Cir.1994).

Where facts presented before the Court give rise to a factual controversy concerning subject matter jurisdiction, the Court is required to weigh the conflicting evidence and make findings of fact to decide whether jurisdiction exists. *Madison–Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir.1996) (noting the district court is empowered to resolve factual disputes when necessary to address challenges to subject matter jurisdiction); *RMI Titanium,* 78 F.3d at 1134; *Ritchie,* 15 F.3d at 598; *Ohio National,* 922 F.2d at 325; *Rogers v. Stratton Industries, Inc.,* 798 F.2d 913, 915–18 (6th Cir.1986). The Court has wide discretion to allow the parties to submit affidavits, documents, and may even hold a limited evidentiary hearing to resolve disputed jurisdictional facts. *Kroll v. United States,* 58 F.3d 1087, 1092 n. 9 (6th Cir. 1995); *Rogers,* 798 F.2d at 916–18. Although district courts have considerable discretion in devising fair procedures for resolving subject matter jurisdiction issues, courts frequently look to Rule 56 for guidance when ruling on evidentiary matters under Rule 12(b)(1). *Ohio National,* 922 F.2d at 327. However, if the parties supplement the record with affidavits and other proof, it does not thereby convert the Rule 12(b)(1) motion into one for summary judgment under Rule 56. *Rogers,* 798 F.2d at 916; *Cooley,* 791 F.Supp. at 1298.

## II. *RELEVANT FACTS*

Plaintiff Cheryll Dyer was employed by Lockheed as a health physics technician at the K–25 facility in Oak Ridge, Tennessee. This facility is owned by the United States and is under the jurisdiction of the United States Department of Energy. The Energy Department enters into contracts with private companies to operate the facility from time to time. The Energy Department solicits bids from private companies to operate the facility. Lockheed is the present contractor. During her employment at Oak Ridge, Mrs. Dyer was allegedly exposed to chemicals and heavy metals, and this exposure caused her to sustain, among other things, chemical encephalopathy. Mrs. Dyer first became aware of her exposure to these toxins in March 1996, when she notified her supervisor a medical test had indicated exposure to harmful substances. Plaintiffs contend Mrs. Dyer was exposed to various toxic substances including nickel material containing arsenic, cadmium and other dangerous heavy metals. The Dyers contend Mrs. Dyer was never told what materials with which she was working, and argue the Government mandated a policy of non-disclosure and misrepresentation that has continued to prevent discovery of the composition of the substances she encountered until the present time. Mrs. Dyer claims that, had she been properly informed, she would have taken the necessary precautions, including wearing a respirator, to protect herself from the toxins. At all times relevant to this litigation, Lockheed has operated in an independent contractor relationship with the Government.

During the period of Mrs. Dyer's employment at Lockheed, World War II and the Cold War were over. Mrs. Dyer also asserts she possessed a "Q" clearance,[2] which should have allowed her to view the classified information regarding the substances with which she worked. The Dyers claim that, as a result of her exposure to nickel and other toxic substances, Mrs. Dyer suffers from chemical encephalopathy, loss of short term memory, and continuous mental and physical distress. Mr.

---

**2.** A "Q" clearance is an Energy Department clearance that permits its holder access to certain government classified information. Such clearances are granted only after an exhaustive investigation of the background of the person for whom the clearance is sought.

Dyer, Mrs. Dyer's husband, claims his wife's injuries have caused him to suffer damages in the form of loss of consortium and medical expenses.

## III. *DISCUSSION*

Plaintiffs have failed to allege a cause of action under the FTCA. That statute, in pertinent part provides:

(b)(1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

28 U.S.C. § 1346(b). The United States Court of Appeals for the Sixth Circuit has held that, by its explicit terms, the FTCA waives the federal government's sovereign immunity only in those instances where the damages sustained were caused by the negligent or wrongful act or omission of an employee of the Government acting within the scope of his or her employment and under circumstances where the Government, if a private person, would be liable to the claimant under the law of the State where the accident occurred. *Cf. United States v. Taylor,* 236 F.2d 649 (6th Cir. 1956).

In their Second Amended Complaint, Plaintiffs allege the Government was engaged in an "ultrahazardous activity," including but not limited to the storage and disposal of materials used to make atomic bombs, and this activity created in the Government a non-delegable duty to ensure the activity was conducted safely. As a result of this rule of non-delegation, the Plaintiffs argue, the Government is liable for the negligence of the independent contractor, i.e. Lockheed, who employed Mrs. Dyer. Generally, the United States is not liable under the FTCA for injuries caused by the negligence of its independent contractors.[3] *United States v. Orleans,* 425 U.S. 807, 814–15, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Logue v. United States,* 412 U.S. 521, 526–27, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973). Plaintiffs have, however, cited to the case of *Mahoney v. United States,* 216 F.Supp. 523 (E.D.Tenn.1962) (*"Mahoney I "*) for the proposition the Government may be held liable for the negligence of independent contractors on the basis of a non-delegable duty arising where the Government has engaged in an ultrahazardous activity.

In *Mahoney I,* the plaintiff, a maintenance mechanic, sued the United States for injuries allegedly sustained while he was employed by Union Nuclear Carbide

---

**3.** This exception is based on the language of the statute which provides the United States is subject to liability for damages "caused by the negligent or wrongful act or omission of any employee of the Government...." 28 U.S.C § 1346(b). The FTCA defines "employee of the Government" as any "employees of any federal agency...." 28 U.S.C. § 2671. "Federal agency" is defined as:

(e) Executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, that does not include any contractor with the United States.

*Id.*

Company, an independent contractor, in the K–25 Area at Oak Ridge, Tennessee. *Id.* at 524, 534. The plaintiff claimed he had been exposed to radioactive and other toxic substances and materials and had, as a result, developed chronic lymphocytic leukemia. *Id.* at 524. The Government moved for dismissal or, in the alternative, summary judgment. The district court (Taylor, J.) held the plaintiff could proceed on his vicarious liability claim:

> The Court is of the opinion that there is a possible basis for suit against the Government for negligence of its independent contractor under the dangerous instrumentality exception. . . .

> "It is true that an employer is not generally liable for the negligence of an independent contractor. However, there is an exception in those cases where, from the nature of the particular work or project, in the natural course of events mischievous consequences can be expected to arise unless means are adopted to prevent it. In such cases the owner-employer is held to be under a non-delegable duty to see that appropriate preventative measures are adopted."

> "This enlightened rule has been recognized and given application by the Tennessee courts."

*Id.* at 535 (quoting *Pierce v. United States,* 142 F.Supp. 721, 728 (E.D.Tenn.1955)) (internal citations omitted).

The holding in *Mahoney I,* that the United States can be liable for the negligence of its independent contractors pursuant to a non-delegable duty that arises when the Government engages in an ultrahazardous activity, would appear to apply in this case. The facts here are very similar to those addressed in *Mahoney.* Plaintiff Mrs. Dyer was employed by Lockheed, an independent government contractor, at the very same facility involved in that case. Like the plaintiff in *Mahoney,* Mrs. Dyer claims she was exposed to toxins, and that exposure resulted in chronic long-term illness. The Court has no reason to take issue with Judge Taylor's conclusion the making of nuclear weapons might reasonably be considered

an ultrahazardous activity. The Court, however, declines to apply the rule enunciated in *Mahoney I* because subsequent cases have cast doubt upon the soundness of its holding.

The Sixth Circuit has never overruled *Mahoney I* or squarely addressed this specific issue, that is whether the non-delegable duty rule may be used to avoid the government contractor exception to liability under the FTCA. In spite of this fact, the Court has found guidance in the persuasive authority of other district court opinions confronting this exact question and controlling Sixth Circuit authority addressing the Government's amenability to suit in other contexts. First, Judge Taylor in a subsequent opinion in the same case, *Mahoney v. United States,* 220 F.Supp. 823 (E.D.Tenn.1963) ("*Mahoney II* "), provided further guidance regarding the Government's liability for the negligence of its independent contractors:

> Negligence and causal relation are prerequisites to recovery under the Federal Tort Claims Act. . . .

> Liability does not arise against the Government solely by its ownership of an "inherently dangerous commodity" or engaging in an "extra-hazardous activity."

> The Government cannot be charged with negligence of the employees of an independent contractor under the non-delegable rule of local law.

*Id.* at 826 (internal citations omitted). He then went on to conclude the government may be held liable only where it has retained general control over the dangerous instrumentality or activity, but even this duty to provide a reasonably safe working environment does not apply where the work itself is of an unsafe nature. *Id.*

From this later opinion, the Court concludes Judge Taylor curtailed considerably his holding in *Mahoney I,* perhaps abrogating the application of the non-delegable duty exception altogether in the case of an employee injured when engaging in work he or she knew at the time involved a

certain amount of risk. The effect of *Mahoney II* on *Mahoney I* is not entirely clear from the text of that opinion. The second case does, however, cast doubt on the precedential value of the broad rule enunciated in the first case. Additionally, a later case out of the Western District of Kentucky casts a further shadow on the value of *Mahoney I* as persuasive authority.

In *Grogan v. United States*, 225 F.Supp. 821 (W.D.Ky.1963), the district court (Shelburne, J.) addressed the applicability of the non-delegable duty rule in a case involving plaintiffs injured while employed by TECO Corporation, an independent contractor, during the construction of the locks of the Barkly Dam Project on the Cumberland River in Livingston County, Kentucky. The district court in that case found in the Government's favor after a full trial on the merits. In reaching this conclusion, Judge Shelburne addressed Judge Taylor's holding in *Mahoney I*:

> The Court has considered the case of *Mahoney v. United States*, E.D.Tenn., 216 F.Supp. 523 (1962), and the very thorough and extensive opinion of Judge Taylor which was decided upon the dangerous instrumentality doctrine.

> In *Stratton v. United States*, D.C.Tenn., 213 F.Supp. 556 (1962), Judge Neese held that under the *Dalehite* ruling the Government cannot be held liable under the dangerous instrumentality nondelegable duty rule and that the Federal Tort Claims Act requires a negligent act or omission by a Government employee; liability does not arise by virtue of either Government ownership of an inherently dangerous commodity or engaging in an extra-hazardous activity.

> It was not alleged in the complaint nor was it contended at the trial of this case that the stairway and scaffolding constituted a dangerous instrumentality. It would not have afforded plaintiffs any claim upon which this Court could have granted relief had it been so alleged or contended. The doctrine of the *Stratton* case, *supra*, is decisive of this case.

Thus, the *Grogan* court declined, in the absence of other evidence of negligence on the part of the Government or its employees, to apply the broad non-delegable duty rule to hold the government vicariously liable for the negligence of an independent contractor.

Instead of following *Mahoney I*, the *Grogan* court decided to follow the rule enunciated in another case out of the Eastern District of Tennessee, *Stratton v. United States*, 213 F.Supp. 556, 560 (E.D.Tenn.1962):

> It is abundantly true that in certain cases the doctrine of absolute liability, or liability without fault, may require a person to respond in damages for injuries resulting from properly conducted activities if such be deemed 'ultrahazardous'. In such event the degree of care used in performing the activity is irrelevant to the application of this theory of liability. But, this rule applies to private persons and not to actions brought against the United States under the Federal Tort Claims Act, *supra*.

> The sovereign has immunity from suit without its consent. The extent of the consent granted by the Federal Tort Claims Act does not extend to situations of strict liability, in the absence of fault, for an unusual or dangerous activity; thus, liability under this Act cannot arise by virtue of ownership by the United States of 'an inherently dangerous commodity' or property, or of engaging in an 'extra-hazardous' activity. *United States v. Hull*, C.A.1st (1952), 195 F.2d 64, 67, cited with approval in *Dalehite v. United States* (1953), 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; *Pierce v. United States*, D.C.Tenn. (1955), 142 F.Supp. 721, 734, *affirmed* C.A.6th, 235 F.2d 466.

The Court thinks the *Grogan* and *Stratton* courts have the better part of the argument on this issue than did the court in *Mahoney I*. The FTCA provides an exception to the well-accepted rule the Government is immune from suit except to the extent it consents to jurisdiction. *See Leh-*

man v. Nakshian, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981); *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Generally, exceptions to sovereign immunity are to be narrowly construed. *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *United States v. Williams*, 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). The FTCA waives sovereign immunity only for *negligent* acts of government *employees*. Independent government contractors are specifically excluded from the FTCA's definition of the word "employee." [4] Consequently, the Court has declined to apply a rule of strict liability, which requires no proof of negligence, to hold the government liable for the negligence of non-employees.[5]

The Court's conclusion is supported by more recent controlling Sixth Circuit authority addressing the Government's amenability to suit in other contexts, including cases involving a "dangerous instrumentality" or "hazardous activity." In *Hall v. U.S.*, 149 F.3d 1183 (Table), 1998 WL 344050, *3 (6th Cir. May 27, 1998), the Sixth Circuit held a non-delegable duty for safety does not arise, even when the Government is engaged in a hazardous activity, because " '[t]he law is clear that the government may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so.' " *Id.* (quoting *Andrews v. United States*, 121 F.3d 1430, 1440 (11th Cir.1997)). The *Hall*

court was addressing the applicability of the discretionary function exception, and whether the Government may be held liable under the FTCA for delegating its duty to maintain a safe workplace. *Id.* The plaintiffs apparently argued the Government did not have, or exercise, discretion in delegating its safety responsibilities to an independent contractor because the hazardous nature of the activity in which the government was engaged gave rise to a non-delegable duty to maintain a safe working environment. *Id.* Applying the rule quoted above, the appeals court held the plaintiffs in *Hall* could not use the non-delegable duty doctrine to get around the discretionary function exception to the court's subject matter jurisdiction under the FTCA. *Id.*

Although it arose in a slightly different posture, the Court thinks the Sixth Circuit's holding in *Hall* clearly applies to this case. If the non-delegable duty never arises, that is, if the Government may *always* delegate its responsibility to maintain a safe workplace absent federal laws or policies restricting it from doing so, then the Government may not be held liable on the grounds that the duty of safety is non-delegable where the Government is engaged in ultrahazardous activities. Plaintiffs have not alleged the Government was prohibited by statute or policy from delegating its duties in this case. Thus, the Government may not be held liable for the actions of Lockheed,

---

4. The FTCA defines an "employee of the government" as "officers and employees of any federal agency," and "federal agency" is defined to include "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, *but does not include any contractor with the United States.*" 28 U.S.C. § 2671 (emphasis added).

5. The Court also notes *Mahoney I* may have misinterpreted the substantive law of Tennessee, which provides the rules of decision in this action. The *Stratton* court noted in its holding:

If it should be contended that the defendant is entitled to a recovery under Tennessee law, the same prohibitory rule applies. The general rule in Tennessee is that negligence, to be actionable, must result in damage to the plaintiff which the defendant could reasonably have anticipated or foreseen. *Tidwell v. Kay's of Nashville* (1952), 194 Tenn. 205, 250 S.W.2d 75, 77, *citing Moody v. Gulf Refining Co.*, 142 Tenn. 280, 218 S.W. 817, 8 A.L.R. 1243 and *Jones v. Stewart*, 183 Tenn. 176, 191 S.W.2d 439.

If true, this statement further undermines the precedential value of *Mahoney I*, as it casts doubt on whether even a private individual could have been subject to liability on the basis of the non-delegable duty doctrine.

an independent contractor, and its employees solely on the basis of an allegedly "non-delegable" duty for workplace safety.

In *Angel v. United States,* 775 F.2d 132 (6th Cir.1985), the Sixth Circuit, applying Ohio law, concluded although "the government is not an insurer and is not liable for the negligence of its independent contractor, it is liable for its own negligence." *Id.* at 140. The court of appeals then went on to conclude the Government could be held liable for failure to warn an employee of an independent contractor of a latent danger where there was evidence the Government had retained sufficient control over the premises on which the employee worked. *Id.* at 141. While this holding might support the Court's jurisdiction over an action involving the Government's own negligence, it does not support jurisdiction over a cause of action based solely on vicarious liability for the negligence of an independent contractor. As a result, the Court finds further support in this case for its conclusion the Government may not be held vicariously liable for the negligence of independent contractors solely on the basis of the non-delegable duty doctrine.

In addition to their claims asserting the Government's liability for the negligence of Lockheed, the independent contractor, Plaintiffs have also asserted causes of action predicated on allegations the Government, through its employees, was itself negligent. The Court, however, has concluded these claims are subject to the discretionary function and misrepresentation exceptions and must be **DISMISSED** as well. First, Plaintiffs claim the Government failed to properly protect Mrs. Dyer from the hazardous substances with which she worked and failed to properly warn her of the danger these substances presented. Second, they claim the Government was negligent per se for failing "to prepare or have available a *material safety data sheet* for a hazardous chemical under the Occupational Safety and Health Act of 1970 ...," and for failing to produce these documents when Mrs. Dyer requested them. Third, Mrs. Dyer contends the Government, through its employees misrepresented the hazards of the chemicals and prevented disclosure of information suggesting the substances presented a health risk. Finally, Mrs. Dyer alleges the Government continues to negligently withhold information that would allow her to obtain treatment for her injuries, even though release of this information would not pose any risk to national security. The Court addresses each contention individually below.

Plaintiffs' FCA claims based upon allegations the Government failed to properly warn Mrs. Dyer against or protect her from the toxic chemicals to which she alleges exposure must fail because they are barred by the discretionary function exception to the Government's waiver of immunity under the FCA. The Sixth Circuit has stated: "It is important to stress that, under a discretionary function exception analysis, allegations of negligence are irrelevant." *Myers v. United States,* 17 F.3d 890, 896 n. 5 (6th Cir.1994). To determine whether it has subject matter jurisdiction to even consider the issue of negligence, the Court must first determine whether the Government's alleged wrongful conduct either: 1) violated a specific and mandatory regulation or statute which prohibited the alleged wrongful activity, or 2) was not susceptible to being based on social, economic, or political policy. *United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Lockett v. United States,* 938 F.2d 630, 632–33 (6th Cir.1991).

In this case, the Government has come forward with indisputable evidence Lockheed was an independent contractor, and the Government, through its Management and Operations ("M & O") contracts for the Oak Ridge facility, delegated to Lockheed responsibility for day-to-day operations and safety decisions (Court File No. 5, Exh. 6, pp. 2–4 and attachments). The Government retained only general oversight authority over Lockheed, the M & O contractor (*Id.*). This oversight authority

included notifying the M & O contractor of the detection of areas of noncompliance with safety and health provisions, providing corrective actions which must be taken by the contractor, and, in some cases, issuing a stop work order in the event of contractor noncompliance with Department of Energy (DOE) requirements (*Id.* at p. 4). Plaintiffs have not put in any evidence or made any factual allegations that might suggest Lockheed was not an independent contractor, or that the United States did not cede to Lockheed responsibility for day to day safety and operations at the plant.

 As discussed above, the Government cannot be held vicariously liable for the negligence of an independent contractor. Plaintiffs' claims against the Government must therefore be grounded upon some allegedly negligent act or omission of the Government itself or its employees. In their claims arising out of the Government's alleged failure to warn or protect Mrs. Dyer, Plaintiffs have not alleged Lockheed failed to comply with a particular safety or health provision. Consequently, the Court presumes these general claims do not relate to an alleged failure on the Government's part to notify Lockheed of noncompliance, provide corrective measures, or issue a stop work order. The Plaintiffs may not rely on allegations the Government failed to issue adequate safety regulations, as such allegations would clearly fall with the discretionary function exception. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (holding purpose of exception is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort").

Similarly, an allegation the government was negligent in failing to issue a warning on its own must fail because the decision to warn is susceptible to policy considerations and therefore falls within the scope of the discretionary function exception to the Court's jurisdiction.[6] The Dyers have not alleged the Government violated an express statutory duty by failing to warn Mrs. Dyer of potential hazards posed by her employment at the K–25 facility. The Court has therefore analyzed the duty to warn under the second prong of the discretionary function test, asking whether the decision to warn or not to warn is susceptible to being based on social, economic, or political policy. The Court has concluded it is. Before issuing a warning, the Government must evaluate evidence of the dangers posed by the alleged hazard, adopt some findings over others indicating a less serious or more serious threat, and weigh the potential risk of harm to third parties against the costs such a warning might impose upon the Government. The case at hand also involves very serious national security issues, and a decision to warn or not to warn may have required the Government to weigh the value of a warning against the possibility such a warning might jeopardize the Government's ability to successfully develop and exploit nuclear technology, disclose to potential foreign enemies information valuable in assessing the nature of the United States' military strength, and perhaps

---

6. Another court in this District recently reached a similar decision:

First, with respect to plaintiffs' claim that DOE employees failed to warn them of the dangers of beryllium, particularly that the applicable OSHA standard was not at a level that would protect all workers from chronic beryllium disease, it is clear that failing to provide the contractor's employees with such warnings did not violate any mandatory regulatory or statutory requirements. Further, any decision with respect to warning the contractor's employees of the dangers of beryllium was a discretionary one. With respect to the alleged failure to warn, the government's decision with regard to the dangers that might result from the exposure to low levels of beryllium is a policy decision and, therefore, protected by the discretionary function exception. *Morgan v. Brush Wellman, Inc.,* Case No. 3:94–CV–369, p. 30 (E.D.Tenn. February 16, 2000) (Jarvis, J.).

equip foreign enemies with information that would enable them to manufacture nuclear devices.

In determining whether the decision to warn falls within the discretionary function exception, the Court does not express any opinion on whether the decision not to warn Mrs. Dyer was or was not negligent since such an opinion is not necessary. At least one Sixth Circuit case indicates a failure to warn in some circumstances might be considered negligent on the part of the Government. *See, e.g., Angel,* 775 F.2d at 145. The Court, however, is also bound by more recent authority explaining the Court must first evaluate jurisdictional issues before even considering issues of negligence and liability. *Myers,* 17 F.3d at 896 n. 5 (6th Cir.1994). The Court has therefore evaluated the decision not to warn Mrs. Dyer of hazards at Oak Ridge under the discretionary function exception and concluded the alleged failure to warn falls within the scope of that exception to the Court's jurisdiction. Consequently, the Court does not have the authority to consider the issues of negligence or the Government's potential liability under the FTCA for claims based on the alleged failure to warn.

█ The only other conceivable basis for Plaintiffs' general claims regarding the Government's alleged failure to protect or warn Mrs. Dyer might be a challenge to the Government's decision to contract with Lockheed and delegate to it responsibility for overseeing day to day compliance with health and safety regulations and for providing for the day to day safety of its employees. The law clearly allows the government to hire independent contractors and delegate to those contractors the responsibility to maintain a reasonably safe workplace. *Hall,* 1998 WL 344050 at *3; *Totten v. United States,* 806 F.2d 698, 701 (6th Cir.1986). Plaintiffs have not argued or alleged the Government's decision to contract with Lockheed and delegate to it the responsibility of ensuring workplace safety was in violation of a statutory, regulatory, or policy directive to the contrary.

In fact, the applicable statutes and regulations explicitly authorize the Government's authority to enter into M & O contracts and provide for safety as it sees fit. *See, e.g.,* 42 U.S.C. §§ 2051(a)–(d). Thus, the Government's decision does not fall within the first prong of the discretionary function test. *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267.

█ Turning to the second prong of the test, the Court concludes the Government's decision to contract with Lockheed was exactly the type of policy-based discretionary function Congress intended to exempt from judicial scrutiny under the FTCA. *Id.; Varig Airlines,* 467 U.S. at 814, 467 U.S. 797. The decision to establish and operate Oak Ridge during World War II in order to facilitate the study of nuclear technology and to promote national security concerns during the period when the United States and its allies contained communism during the Cold War, was based on policy decisions regarding the best means to develop and exploit atomic energy and nuclear weapons. Even after the conclusion of World War II and the Cold War, the Government's decision on whether to continue or dismantle the operations at Oak Ridge was susceptible to similar policy considerations regarding the continuing benefit of government funding and oversight of nuclear weapons and energy research and development. The Court has therefore concluded it does not have jurisdiction to examine the decision to delegate in an action brought pursuant to the FTCA. Because Plaintiffs' general allegations the Government failed to adequately warn Mrs. Dyer of the hazards presented at the K–25 facility and did not adequately protect her from those hazards are premised on government actions that fall within the purview of the discretionary function exception to jurisdiction under the FTCA, the Court concludes these claims must be **DISMISSED.**

█ In addition to their general allegations the Government failed to warn and protect Mrs. Dyer while she was working

at Oak Ridge, Plaintiffs have also alleged the Government was negligent per se in failing to ensure Lockheed's compliance with federal statutory law. Particularly, the Dyers claim Lockheed failed to maintain and make available Material Safety Data Sheets ("MSDS") for hazardous materials, as required by 42 U.S.C. § 11021, and thus violated federal statutes mandating the labeling of hazardous materials. This provision requires "the owner or operator of any facility which is required to prepare or have available a material safety data sheet for a hazardous chemicals under the Occupational Safety and Health Act of 1970 ["OSHA"] [29 U.S.C.A. § 651 et seq.] and regulations promulgated under that Act [to] submit a material safety data sheet for each such chemical...." 42 U.S.C. § 11021(a)(1). These new allegations fail to create a basis for subject matter jurisdiction because the Oak Ridge facility is specifically exempted from the requirements of OSHA.

The relevant section of the 1954 Atomic Energy Act provides:

> In the performance of its functions the [DOE] is authorized to—
>
> . . . . .
>
> (i) Regulations governing Restricted Data
>
> prescribe such regulations or orders as it may deem necessary ... (3) to govern any activity authorized pursuant to this chapter, including standards and restrictions governing the design, location, and operation of facilities used in the conduct of such activity, in order to protect health and to minimize danger to life or property;

42 U.S.C. § 2201(i). The DOE therefore has authority to regulate the "design, location, and operation" of nuclear facilities. OSHA excludes from its purview "working conditions of employees with respect to which other Federal agencies, ... exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." 29 U.S.C. § 653(b)(1). The U.S. Department of Labor, the federal agency charged with en-

forcing OSHA, and the DOE have issued a Memorandum of Understanding formalizing the authority of the DOE to prescribe health and safety requirements at Government Owned Contractor Operated ("GOCO") facilities like Oak Ridge:

> DOE exercises statutory authority under the Atomic Energy Act of 1954, and subsequent Federal laws, for the occupational safety and health of contractor employees at its GOCO facilities through legally enforceable requirements for occupational safety and health. These requirements are contained in DOE orders which require DOE contractors operating GOCO facilities to comply with applicable OSHA standards as well as additional safety and health requirements which DOE has adopted. Section 4(b)(1) renders the Act inapplicable, as a matter of law, to working conditions of contractor employees at DOE GOCO facilities for which DOE exercises its statutory authority, pursuant to the Atomic Energy Act of 1954, to establish and enforce occupation safety and health standards.

April 16, 1999, Memorandum (Court File No. 5, Exh. 3, Attachment 2, pp. 6–7).

The statutory provisions, combined with the Memorandum of Understanding, clearly exempt nuclear facilities such as Oak Ridge from compliance with OSHA itself, even though specific DOE regulations may require compliance with standards set by that statute and its implementing regulations in some instances. Therefore 42 U.S.C. section 11021, which applies only to "owner[s] or operator[s] of any facility which is required to prepare or have available a material safety data sheet for a hazardous chemicals under [OSHA]," does not apply to the Government in this case. The Government was not, therefore, under any statutory duty to prepare or make available MSDS in these circumstances. As the Government was not bound by the express terms of section 11021 to comply with its terms, the decision to require compliance or not was the type of decision that

falls within the discretionary function exception to the Court's jurisdiction under the FTCA. Accordingly, Plaintiffs' claims based on the Government's alleged failure to comply with 42 U.S.C. section 11021 will be **DISMISSED** as well.

 Finally, the Dyers allege the Government deliberately withheld information about the hazards Mrs. Dyer might encounter at the K–25 facility and required Lockheed to misrepresent the health risks presented by those hazards. These claims are barred by the misrepresentation and discretionary function exceptions to the Government's waiver of sovereign immunity under the FTCA. First, Plaintiffs attempt to plead around these exceptions by alleging the withholding and misrepresentation of information concerning the hazardous substances at Oak Ridge violated 18 U.S.C. § 1001.[7] This criminal statute does not, however, impose any mandatory or specific duty on the United States because it applies only to private individuals making intentionally false statements to a government agency, not to statements made by a federal government agency to a private person. *See Friedman v. United States,* 374 F.2d 363 (8th Cir.1967). Section 1001 is therefore irrelevant to the consideration of whether the alleged withholding and misrepresentation of information falls within the discretionary function or misrepresentation exceptions to the FTCA.

As the Government's activities in allegedly withholding information about hazardous toxins at Oak Ridge and misrepresenting the nature of the dangers posed by those toxins apparently did not violate any specific statutory duty of truthful disclosure, the Court turns to the second prong of the discretionary function test. The Government's decision to withhold or misrepresent information about the chemical substances used and encountered at the K–25 facility was clearly susceptible to policy considerations. Plaintiffs' have alleged this information no longer posed a national security risk once World War II and the Cold War were over. The Government may have, however, disagreed. The decision to classify or declassify information is one that involves numerous policy and security considerations, and is exactly the type of decision Congress sought to exempt from judicial scrutiny under the FTCA. Similarly, the fact Mrs. Dyer had "Q" level security clearance does not change the Court's analysis of this issue. The discretionary function exception to the FTCA allows the Government, in the absence of a statutory or regulatory mandate to the contrary, to decide, without fear of judicial second-guessing, when it will disclose information, what information it will disclose and to whom.

Plaintiffs' claims the Government intentionally misrepresented the fundamental nature of the toxins Mrs. Dyer encountered while working at Oak Ridge are also barred by the misrepresentation exception to the Court's jurisdiction under the FTCA. The FTCA excludes recovery for "[a]ny claim arising out of ... misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). The FTCA precludes imposition of any liability based upon the government's alleged communication of false information or failure to communicate correct information. *See Block v. Neal,* 460 U.S. 289, 297, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983); *United States v. Neustadt,* 366 U.S. 696, 705–06, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). The exception bars liability alleged to arise out of either

---

7. (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
 (1) falsifies, conceals, or covers up by any. trick, scheme, or device a material fact;
 (2) makes any materially false, fictitious, or fraudulent statement or representation; or
 (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
 shall be fined under this title or imprisoned not more than 5 years, or both.
 18 U.S.C. § 1001(a).

738

intentional or negligent concealment or misrepresentations. *Neustadt*, 366 U.S. at 702, 81 S.Ct. 1294; *Fitch v. United States*, 513 F.2d 1013, 1015 (6th Cir.1975). The exception is broadly construed and deprives the courts of jurisdiction over these claims. *Neustadt*, 366 U.S. at 705–06, 81 S.Ct. 1294; *Fitch*, 513 F.2d at 1016. As a result of the misrepresentation exception and case law broadly construing the exception, the Court is without jurisdiction to hear the Dyers' claims arising out of alleged misrepresentations regarding the hazards Mrs. Dyer encountered while working at the K–25 facility at Oak Ridge. Because the Court lacks jurisdiction to hear Plaintiffs' claims arising out of the Government's alleged withholding or misrepresentation of information concerning working conditions at Oak Ridge, these claims will be **DISMISSED** as well.

## IV. *CONCLUSION*

For the foregoing reasons, the Court has concluded Plaintiff's claims are barred by various exceptions to the Court's subject matter jurisdiction to hear causes of action brought pursuant to the Federal Tort Claims Act, 42 U.S.C. § 1346. Accordingly, the Court will **GRANT** Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint for Lack of Subject Matter Jurisdiction (Court File No. 24) and will **DISMISS** the other two motions (Court File Nos. 4 & 13) as **MOOT**. As no other claims will then remain for adjudication, the Court will also **DIRECT** the Clerk of Court to **CLOSE** this case.

An Order shall enter.

### *ORDER*

This case is before the Court on the Motion to Dismiss Plaintiffs' Second Amended Complaint for Lack of Subject Matter Jurisdiction (Court File No. 24) filed by Defendant United States of America (the "Government"). In addressing this motion, the Court necessarily addresses the Government's Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction (Court File No. 4) and Motion to Dismiss Plaintiffs' Amended

Complaint for Lack of Subject Matter Jurisdiction (Court File No. 13). In accordance with the accompanying Memorandum, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint for Lack of Subject Matter Jurisdiction (Court File No. 24) and **DISMISSES** the other two motions (Court File Nos. 4 & 13) as **MOOT**. As no other claims remain for adjudication, the Court also **DIRECTS** the Clerk of Court to **CLOSE** this case.

**SO ORDERED.**